## GLOVER v. BURBIDGE.

1. In an action at law this court has no power to review a decision of the Circuit Judge refusing to grant a new trial, when the motion was based on an alleged insufficiency of testimony.
2. Naked depositaries are liable only for gross negligence, or a lack of ordinary care; and where a party makes a special deposit of money in the safe of a merchant, whose known habit is to permit trusty clerks to open his safe, the Circuit Judge erred in instructing the jury that the depositary would be liable for the loss of this money if it was abstracted out of the safe by one of their employees.

Mr. CHIEF JUSTICE SIMPSON concurred in the result, and MR. JUSTICE McIVER dissented.

Before KERSHAW, J., Colleton, March, 1887.

This was an action by James S. Glover against John W. Burbidge, survivor of John W. Burbidge & Co., and J. F. Lucas, executor of J. C. Lucas. The opinion states the case.

*Mr. C. C. Tracy*, for appellants.

*Messrs. Edwards & Son*, contra.

October 6, 1887.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    John W. Burbidge and J. C. Lucas were merchants at Walterboro, under the name and style of John W. Burbidge & Co., and used in their business a Stern & Marvin's safe with two keys, each member of the firm carrying one.    On December 14, 1880, the plaintiff, James S. Glover, being about to leave the town, went into their office, and for convenience and safety deposited with John W. Burbidge two hundred dollars, and took from him the following acknowledgment: "$200.    Due James S. Glover or bearer two hundred dollars left on deposit. (Signed) John W. Burbidge & Co."    The money was counted, put into an envelope with Glover's name upon it, and placed in one of the pigeon holes of the safe.    Nothing more concerning the matter appears until after the death of Lucas and the settlement of his estate, when, as the plaintiff states, he was looking through a pocket-book for some old notes, and "found this note among others, some of which were out of date."    He then, in 1886, presented the paper to John W. Burbidge for payment, which was refused, and he thereupon brought this action.

The partner, Lucas, having died in the meantime, his executor, John F. Lucas, denied each and every allegation of the complaint, pleaded that his testator was never liable for the individual transaction of his partner; but if so, he had fully administered the estate of his testator.    The surviving partner, Burbidge, admitted the deposit, but alleged that no consideration was received for it; that the money was taken on deposit purely as a matter of kindness and accommodation for a few days; that the package containing the money was deposited in the safe and was never broken by either member of the firm or by their authority; and that if the package was not handed back to the plaintiff, it was lost without negligence upon the part of the firm.

The cause came on for trial before Judge Kershaw and a jury. The testimony is printed in the Brief, and it appears that there

was really no evidence of importance upon the point in issue, except that of the parties—the plaintiff, Glover, and the surviving partner, Burbidge. The other party to the transaction, J. C: Lucas, was dead, and of course his lips were closed.

Under the charge of the judge the jury found for the plaintiff two hundred dollars, and the defendant appeals to this court upon the following grounds: "I. Because his honor charged the jury that if the money was abstracted by one of the defendants' servants, who were occasionally sent to the safe, defendants would be liable as naked depositaries, which it is respectfully submitted was error. II. Because his honor failed to charge the jury as requested by defendants, that if the jury believed from the testimony that no consideration of any kind had been given the defendants for the instrument in writing herein sued on, that the defence of *nudum pactum* had been made out, which it is respectfully submitted was error. III. Because his honor failed to charge the jury as requested by the defendants that the gross negligence necessary to charge defendants must amount to deceit or fraud, which it is respectfully submitted was error. IV. Because his honor failed to define gross negligence to the jury, which it is submitted was error. And at the same time and place will move the court to reverse the order of his honor refusing to grant the new trial moved for, on the following grounds : 1 Because his honor should have held that there was no evidence to sustain the verdict. 2. Because his honor should have held that the jury had disregarded both law and facts in their verdict, inasmuch as there was nothing to show either deceit or fraud on the part of the defendants," &c.

This is an action at law, and it surely cannot be necessary to repeat what we have so often held, that this court has no authority to review a decision of the Circuit Judge refusing to grant a new trial upon the alleged insufficiency of the testimony as to the facts.

Several of the grounds of appeal allege that the judge refused to charge certain "requests" made. We have not been able to find such requests in the "Case;" but from the view which the court takes, it will not be necessary to consider any of the grounds but the first, viz., "That his honor charged the jury

that if the money was abstracted by one of the defendants' servants, who were occasionally sent to the safe, defendants would be responsible as naked depositaries." What the judge did say is the following: "Well, now, if that is the nature of the transaction (and it is for you to say whether it is or not), then, though it was not paid back again, they could not be made responsible, unless it appeared that they had not used even ordinary care. They would, in that case, be liable for what is called gross negligence. If they used it for their own purposes, or if it was abstracted out of the safe by any one of their servants or employees, who are occasionally sent to the safe, or if it appeared to be kept in such a loose and careless manner as to amount to gross negligence—only in these conditions would they be liable," &c.

We agree entirely with the announcement here made of the general principle, that naked depositaries are only liable for gross negligence or a lack of ordinary care. But we think that in enumerating the matters which would amount to gross negligence, the rule, as applied to employees sent to the safe, was stated somewhat too positively and broadly. In the connection here, the question was not whether a principal is responsible for the criminal act of his servant, or, if so, to what extent; but it was simply whether the defendants exercised ordinary care in reference to the deposit, which, as it seems to us, was to be determined by what was their business habit in regard to entering their safe. When the plaintiff voluntarily made the defendants his accommodation depositaries for a day or two, he must be taken to have done so with reference to the fact that they had a safe, and to their known habits of business in regard to it. If it was the habit of the defendants occasionally, as found necessary or convenient, to send a trusty clerk to the safe with a key, we can hardly suppose that, by accepting the deposit, they bound themselves to a higher degree of care than they habitually exercised in their own business, and in reference to their own cash. The very question was as to ordinary care—whether the occasional sending of a trusty clerk to the safe was, under the circumstances, less than ordinary care, and necessarily gross negligence. "When the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of bailee, and of course makes

him answerable only for gross neglect." *Story Bail.*, § 23. "If goods deposited are stolen by the servants of a private depositary, without gross negligence on his own part, he is not chargeable any more than he would be if the theft were by a stranger." *Ibid.*, § 88; *Foster* v. *Essex Bank*, 17 *Mass.*, 479, 9 *A. D.*, 168. "The fidelity which the depositary ought to apply to the care of the thing confided to him, should be the same which he applies to the care of his own." *Story Bail.*, § 65.

In any view that can be taken, it seems to us that the question was not one purely of law, but, to a large extent at least, one of fact, and should have been left to the jury.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE SIMPSON concurred in the result.

MR. JUSTICE McIVER. I dissent. It seems to me that the paper sued on was an ordinary due bill, the additional words— "money left on deposit"—only serving to show the consideration. If this be so, then I am not prepared to admit that it was competent for the defendants to show by parol evidence that the contract was of a different character. I am inclined to think, therefore, that the plaintiff was entitled to recover.